OPINION
Defendant appellant, John Barber, appeals the decision of the Butler County Court of Common Pleas denying his motions for a new trial and a judgment notwithstanding the verdict. For the reasons that follow, we affirm the decision of the trial court.
Barber purchased his home in Monroe, Ohio in 1962. At that time, the adjacent lot west of his property was vacant. A few years later, a house was constructed on the vacant lot. Plaintiff-appellee, Bracey Lee, purchased the home constructed next to Barber around 1968. Barber and Lee have been next-door neighbors ever since.
The relationship between Lee and Barber had been amicable until 1996. It quickly deteriorated when Barber complained to Lee several times about rainwater and sewage runoff onto his property. The natural slope of the land causes surface water to drain toward Barber's property. However, Barber accused Lee of altering the natural drainage of the land by filling in a natural swale between the lots, thus increasing the amount of surface water that would flow directly onto his property. Barber also believed that Lee's septic system was malfunctioning, causing sewage to leak onto Barber's yard. Barber complained about the drainage and septic system problems to the police, mayor and city manager.
In 1997, Lee filed a complaint against Barber for trespass and defamation. Barber filed a counterclaim alleging diversion of surface water, nuisance and assault. The case was tried before a jury. The jury awarded Lee $240 in compensatory damages for trespass, as well as $1,000 in compensatory damages and $2,500 in punitive damages for defamation. The jury awarded Barber compensatory damages of $2,108 for surface water diversion and $500 for nuisance. The jury rejected Barber's assault claim. Barber then moved the trial court to issue an injunction against Lee to prohibit him from "discharging surface water onto [Barber's] property ***."
In a judgment entry filed November 16, 1999, the trial court ordered an award of damages as follows: $2,500 in compensatory damages to Lee for defamation, $240 compensatory damages to Lee for trespass and $500 to Barber for nuisance.[1] Barber moved the trial court for a new trial or a judgment notwithstanding the verdict on the basis that the trial court's judgment entry failed to address his request for injunctive relief. The trial court denied Barber's motions. Barber appeals the decision of the trial court and raises two assignments of error for review.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PREVENTED APPELLANT'S EXPERT FROM TESTIFYING REGARDING THE CAUSE OF THE CRACKING AND SETTLING IN HIS RESIDENCE.
In his first assignment of error, Barber argues that the trial court erred by "preventing" his expert from testifying about the cause of cracking and settling occurring in the driveway, patio, garage and foundation of his house. Barber sought to establish through the testimony of his expert that the alleged excess surface water runoff from Lee's property caused the cracking and settling. Barber maintains that the trial court erred by requiring his expert to give his opinion as to the cause of the damage "to a reasonable degree of engineering certainty."
Under Evid.R. 702, three requirements must be met for expert testimony to be admissible. First, the testimony must relate to matters beyond the knowledge or experience of lay persons, or dispel a misconception common among lay persons. Evid.R. 702(A). Second, the witness must be "qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Evid.R. 702(B). Third, the testimony must be "based on reliable scientific, technical, or other specialized information." Evid.R. 702(C).
An expert opinion about an issue of causation is admissible only if it is expressed in terms of probability or a reasonable degree of scientific certainty. Stinson v. England (1994), 69 Ohio St.3d 451, paragraph one of the syllabus; Shephard v. Midland Mut. Life Ins. Co. (1949),152 Ohio St. 6, syllabus.[2] Thus, an expert's opinion is competent only if the expert is able to express that there is a greater than fifty percent likelihood that a causative event produced the occurrence at issue in the case. Stinson, 69 Ohio St.3d at paragraph one of the syllabus. Expert opinions expressed with a lesser degree of certainty must be excluded as speculative. See id.; Schumaker v. Oliver B. Cannon Sons, Inc. (1986),28 Ohio St.3d 367, 369.
A trial court's decision to admit or exclude expert testimony will not be reversed absent an abuse of discretion. Wightman v. Consolidated RailCorp. (1999), 86 Ohio St.3d 431, 437. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See,e.g., Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
At trial, Barber called Jeffrey Hill, vice president of Dwyer Concrete Lifting, to testify as an expert. Hill possesses degrees in civil engineering and concrete technology. He has experience with restoring and stabilizing hardened concrete. No one disputes that Hill met the threshold qualifications under Evid.R. 702 to give an expert opinion in this case. However, the trial court would not permit Hill to testify unless Hill expressed his opinion regarding the cause of damage to Barber's house to a reasonable degree of engineering certainty.
Counsel for Barber tried to elicit from Hill what the causes of the damage "could be," but the trial court would not permit Hill to answer. Then counsel, in general terms, attempted to elicit what "probably" caused the damage without ascertaining whether Hill had determined the cause to a degree of certainty greater than fifty percent. Again, the trial court prohibited Hill from answering and instructed counsel that the opinion would not be permitted unless it was expressed to a reasonable degree of scientific certainty. Ultimately, counsel properly asked Hill if he had an opinion "within a reasonable degree of scientific certainty as to what caused" the problem with the Barber residence. Hill responded: "My opinion is the foundation has settled in the northwest corner. The exact cause I do not have. Excessive water in an area like that can definitely cause the problem. I've seen it many, many times in the industry." Upon an objection raised by opposing counsel, the trial court struck Hill's answer. Counsel for Barber then dismissed Hill from the witness stand.
Contrary to Barber's assertion, the trial court did not "prevent" his expert from testifying. The trial court only prevented Hill from speculating under the guise of an expert opinion as to what "possibly" or "may" have caused the damage to Barber's house. The trial court provided Barber multiple opportunities to elicit a competent expert opinion. Apparently, Hill was either unable or unwilling to opine that there was a greater than fifty percent likelihood that the surface water runoff from Lee's property caused the damage to Barber's property, and counsel dismissed him from the witness stand. The trial court did not abuse its discretion. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DENIED HIS REQUEST FOR AN INJUNCTION.
In his second assignment of error, Barber contends that the trial court erred by denying his motion for an injunction. On November 15, 1999, one day before the journalization of the entry of final judgment in the case, Barber moved the trial court to enjoin Lee "from discharging surface water" onto Barber's property. Barber later moved the trial court for a new trial or a judgment notwithstanding the verdict on the basis that the trial court "failed to address the issue of injunctive relief." The trial court overruled appellant's motions, stating Barber had never before sought injunctive relief for surface water diversion, that injunctive relief should not be granted because Barber had an adequate remedy at law, and that the principles of res judicata prevented the court from entertaining Barber's motion.
The decision to grant or deny an injunction is within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. Danis Clarkco Landfill Co. v. Clark Cty.Solid Waste Mgt. Dist. (1995), 73 Ohio St.3d 590, paragraph three of the syllabus. We conclude that the trial court did not abuse its discretion by denying injunctive relief to Barber.
The trial court did not expressly rule on Barber's motion for an injunction in its final judgment entry. Generally, when a trial court fails to rule on a motion, the appellate court will presume the trial court overruled the motion. See, e.g., Dozer v. Dozer (1993),88 Ohio App.3d 296, 303. Therefore, the entry of final judgment impliedly overrules all pending motions upon which the court has not ruled. Smith v. Advantis Computer Consulting, Inc. (Mar. 29, 2001), Franklin App. No. 00AP-361, unreported. Barber's pending motion for injunction was therefore overruled by the entry of final judgment.
Barber had the opportunity before or during trial to amend his counterclaim to request injunctive relief for surface water diversion. Instead, Barber waited until after the verdict had been rendered and filed a motion the day before the trial court entered final judgment.
Injunctive relief is an equitable remedy that is available only where there is no adequate remedy at law. Haig v. Ohio State Bd. of Edn. (1992), 62 Ohio St.3d 507, 510. A party seeking a permanent injunction must show by clear and convincing evidence that the injunction is necessary to prevent irreparable harm and that the party does not have an adequate remedy at law. Procter Gamble Co. v. Stoneham,140 Ohio App.3d 260, 267-68. Irreparable harm is an injury for which there is no plain, adequate, and complete remedy at law, and for which money damages would be impossible, difficult, or incomplete. Clevelandv. Cleveland Elec. Illum. Co. (1996), 115 Ohio App.3d 1, 12.
Barber did not demonstrate by clear and convincing evidence that an injunction against Lee for improper water diversion was necessary to prevent irreparable harm. Barber did not demonstrate that he did not have an adequate remedy at law. Rather, Barber sought monetary damages for improper water diversion and nuisance, which was exactly what the jury awarded him.
The trial court did not abuse its discretion by denying Barber's request for injunctive relief. Accordingly, Barber's second assignment of error is overruled.
 ________________________ POWELL, J.
YOUNG, P.J., and WALSH, J., concur.
[1] While both parties point out the "discrepancy" between the jury's verdict and the trial court's entry, neither raises the issue in an assignment of error. As such, we will not address the issue of the discrepancy in our decision. See App.R. 12(A).
[2] In a case preceding Stinson, the Ohio Supreme Court appears to have lessened the standard for criminal cases to allow experts to testify in terms of possibility. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191
("While several decisions from this court indicate that speculative opinions by medical experts are inadmissible since they are base on possibilities and not probabilities, *** we believe the better practice, especially in criminal cases, is to let experts testify in terms of possibility"); see, also, State v. Jones (Aug. 8, 1998), Hamilton App. No. C-970043, unreported (acknowledging and criticizing the inconsistent standards). However, Stinson, at least in the context of civil cases, adheres to the traditional rule that the admissibility of expert testimony on the issue of causation is contingent upon the expression of the opinion in terms probability or reasonable scientific certainty.